UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ROSALIND KURITA,                    )
                                    )
          Plaintiff,                )
                                    )
v.                                  )
                                    )         No. 3:08-0948
                                    )         JUDGE ECHOLS
THE STATE PRIMARY BOARD OF THE      )
TENNESSEE DEMOCRATIC PARTY,         )
et al.,                             )
                                    )
          Defendants.               )

<u>MEMORANDUM</u>

Plaintiff Rosalind Kurita filed this lawsuit under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. She named as Defendants the State Primary Board of the Tennessee Democratic Party and all of its individual members acting in an official capacity, the Tennessee Democratic Party, Robert E. Cooper, Jr., Attorney General of the State of Tennessee, Sandy Cherry in her official capacity as the Administrator of the Cheatham County Election Commission, Vickie Koelman in her official capacity as the Administrator of the Montgomery County Election Commission, Gay Robinson in her official capacity as the Administrator of the Houston County Election Commission, Riley Darnell in his official capacity as the Secretary of State of Tennessee, Brook K. Thompson in his official capacity as the Coordinator of Elections of the State of Tennessee, and Tim Barnes as a Democratic candidate for State Senate District 22.

1

Plaintiff alleges that the result of the Democratic primary election for Senate District 22 was set aside by the State Primary Board of the Tennessee Democratic Party without affording her due process in violation of the federal Constitution. She asks the Court to overturn the decision of the State Primary Board and order that her name be placed on the ballot for the general election as the Democratic candidate for Senate District 22. In the alternative, if the general election is allowed to proceed with Defendant Barnes' name on the ballot, Plaintiff asks the Court to exercise its equitable powers to set aside the general election results and order a special election for Senate District 22.

All Defendants filed Motions to Dismiss Plaintiff's Verified Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Docket Entry Nos. 23, 32, 36.) Defendants also filed responses to Plaintiff's motion for a preliminary injunction, (Docket Entry Nos. 33-35), and Defendants Barnes, Tennessee Democratic Party, and State Primary Board filed reply briefs in support of their Motions to Dismiss. (Docket Entry Nos. 50 & 51.)

Plaintiff filed a consolidated response to Defendants' motions to dismiss (Docket Entry No. 38), as well as reply briefs in support of her motion for a preliminary injunction (Docket Entry

Nos. 39-41).  The State Defendants filed a sur-reply.  (Docket
Entry No. 44.)

## I.  **FACTS**

The Plaintiff is a resident of Clarksville.  Since 1996 she
has been elected as a Democrat to serve as State Senator in
District 22, which is comprised of Montgomery, Cheatham and Houston
Counties.  In 2008 Plaintiff was named Speaker *Pro Tempore* of the
Senate.

Pursuant to Tenn. Code Ann. § 2-13-202, the Tennessee
Democratic Party is required to nominate its candidate for a
specific seat in the Tennessee General Assembly by means of a
primary election held at the regular August election.  Plaintiff
and Tim Barnes were the only candidates whose names appeared on the
Democratic ballot for Senate District 22 at the primary election
held on August 7, 2008.  On August 18 the Montgomery, Cheatham and
Houston County Election Commissions met pursuant to Tenn. Code Ann.
§ 2-8-101(a), and certified that Plaintiff received 4,477 votes and
Defendant Barnes received 4,458 votes, a difference of 19 votes.

On August 25, 2008, Defendant Barnes filed an election contest
with the Democratic State Primary Board pursuant to Tenn. Code Ann.
§ 2-17-104.[1]  Defendant Barnes alleged several irregularities in

_____

[1]This statute reads:

(a) Any candidate may contest the primary election of the
candidate's party for the office for which that person was a
candidate.

3

the primary election, and Plaintiff responded to the charges in writing.

On September 4, 2008, pursuant to Tenn. Code Ann. § 2-8-113, Brook Thompson, the State Coordinator of Elections, issued certificates declaring the party nominees of various state primary races based upon the votes received by the candidates. He notified the Democratic State Executive Committee that Plaintiff won the Democratic primary election for Senate District 22 by a margin of 19 votes.

On September 13 the Executive Committee of the Tennessee Democratic Party, which pursuant to Tenn. Code Ann. § 2-13-102 acts as the State Primary Board for the party, held a hearing to consider Defendant Barnes' election contest. On the morning of the hearing, the State Primary Board adopted "Agreed Rules of Procedure" to govern the hearing.[2] Plaintiff alleges that rules of

---

(b) To institute a contest, the candidate shall, within five (5) days after the certification of results by the county election commission, file a written notice of contest with the state primary board of the candidate's party and with all other candidates who might be adversely affected by the contest. In the notice the candidate shall state fully the grounds of the contest.

(c) The state primary board shall hear and determine the contest and make the disposition of the contest which justice and fairness require, including setting aside the election if necessary.

[2]Plaintiff participated in preparing these Agreed Rules (Docket Entry No. 1, Ex. 5) for the hearing although she did not formally agree to them in order to preserve her due process challenges. The transcript of the evidentiary hearing before the

4

procedure to govern this type of hearing before the State Primary Board did not exist at the time Barnes filed his election contest, and such procedural rules were created only after Barnes filed his challenge to Plaintiff's primary election victory. Plaintiff further alleges the State Primary Board adopted the rules of procedure without utilizing any formal rule-making procedure. She contends she did not submit herself to the procedural rules adopted by the State Primary Board and, because she did not have advance notice of the procedural rules that would govern, she did not have an adequate opportunity to prepare for the hearing to defend the results of the primary election in her favor.

At the September 13 hearing, following the presentation of evidence and arguments of the parties, the State Primary Board voted to declare the results of the Democratic primary election for the Senate District 22 seat "incurably uncertain"[3] and to set aside

_____

State Primary Board shows that Plaintiff did not make any objections to the use of the Agreed Rules and the hearing proceeded in accordance with them.

[3]This standard can be found in Tennessee Supreme Court opinions dating back 140 years. See Barry v. Lauck, 45 Tenn. 588, 1868 WL 2159 *2 (Tenn. 1868). The Tennessee Supreme Court aptly stated the standard in Emery v. Robertson County Election Comm'n, 586 S.W.2d 103, 109 (Tenn. 1979):

> The courts may also void elections upon a sufficient quantum of proof that fraud or illegality so permeated the conduct of the election as to render it incurably uncertain, even though it cannot be shown to a mathematical certainty that the result might have been different.

5

the result of the primary election. Plaintiff alleges the State Primary Board did not make any specific findings on the record during or after the hearing as to why the primary election result was "incurably uncertain."

On September 15 Plaintiff filed a notice pursuant to Tenn. Code Ann. §2-7-133(I) with the County Election Commission in each county in Senate District 22 requesting that any write-in ballots for her in the general election be counted. Any write-in votes cast for Plaintiff at the general election would be ineffective unless such a pre-election filing was made.

As directed by the State Primary Board, on September 17 the Democratic Executive Committees for Montgomery, Cheatham and Houston Counties met in convention and by a large majority selected Defendant Barnes as the Democratic Party candidate whose name will appear on the general election ballot in November for Senate District 22 race. Plaintiff alleges that, as a result of Defendants' unlawful actions, she was deprived of the Democratic nomination for Senate District 22, even though Defendant State Election Coordinator Thompson calculated the votes cast in each of the three counties in the District and certified her as the winner of the primary election for that seat.

On September 24 Plaintiff filed her Verified Complaint in federal court. The next day she filed a motion seeking preliminary injunctive relief, a motion to consolidate the hearing on the

merits with the hearing on the request for injunctive relief, and a motion to expedite the case. (Docket Entry Nos. 5, 7, 8.) On October 1 the Court granted the motions to consolidate and expedite, set a briefing schedule and scheduled a hearing for Friday, October 10, 2008 at 10:00 a.m. (Docket Entry No. 16.) The Court subsequently amended the briefing schedule to allow Defendants additional time to file dispositive motions and all parties additional time to respond to pending motions. (Docket Entry No. 28.)

In her Verified Complaint, Plaintiff claims that Tenn. Code Ann. § 2-17-104 is unconstitutional on its face because it violates the due process requirements of the Fourteenth Amendment. She contends the statute provides inadequate notice of the rules to be followed at the hearing on the contest, provides no rules or standards in advance of the hearing for the State Primary Board to follow in a contested primary election, allows the State Primary Board to promulgate rules for the conduct of a contested primary election at any time prior to the hearing, does not require written findings of the Board's final decision, and provides no rules or procedures for choosing a replacement nominee if the primary election is set aside. Further, she contends that the rules promulgated by the State Primary Board to hear Defendant Barnes' election contest failed to provide any standards upon which the Board could base a decision.

7

Plaintiff also claims that § 2-17-104 is unconstitutional as applied to her in that it violates the requirements of due process. She contends she was given insufficient notice of the rules that would apply at the hearing to determine the outcome of the contested primary election, and the State Primary Board failed to make findings on the record as to its decision to overturn her primary election victory. Further, Plaintiff contends, § 2-17-104 violates due process and is unconstitutional as applied to her because it fails to provide a procedure for the selection of a new nominee after a primary election has been set aside, and the State Primary Board acted arbitrarily and capriciously in the mechanism it employed for the selection of a new nominee after her election was set aside.

## II.  STANDARDS OF REVIEW

Defendants move to dismiss the Verified Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  When a defendant moves to dismiss for lack of subject matter jurisdiction, the plaintiff has the burden of proving jurisdiction.  Nichols v. Muskingum College, 318 F.3d 674, 677 (6th Cir. 2003).  The Court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits.  See id.  However, where a defendant contends that the plaintiff has not alleged sufficient facts in her complaint to

8

create subject matter jurisdiction, the Court takes the allegations of the complaint as true.  See id.

In evaluating a complaint under Rule 12(b)(6), the Court must accept as true all of the plaintiff's factual allegations and resolve all doubts in the plaintiff's favor.  See Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987).  In construing a complaint in favor of the plaintiff, however, the Court is not required to accept as true a legal conclusion couched as a factual allegation.  Papasan v. Allain, 478 U.S. 265, 286 (1986).  The plaintiff must provide the grounds for her entitlement to relief, and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, — U.S.–, 127 S.Ct. 1955, 1964-65 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 (1957)).  The factual allegations supplied must be enough to show a plausible right to relief.  Id. at 940-942.  A complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory.  Id. at 944; Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).  Because the Court grants the Motions to Dismiss for failure to state a claim, the standards for granting preliminary and permanent injunctive relief become irrelevant.[4]

---

[4]See Tucker v. City of Fairfield, 398 F.3d 457, 461 (6th Cir. 2005) (to grant preliminary injunctive relief, Court must consider: (1) whether Plaintiff has sufficiently established a reasonable

9

### III.  ANALYSIS

The Tennessee General Assembly adopted Tenn. Code Ann. § 2-17-104 in 1972.  The "legislative intent was that intra-party squabbles over the nominating procedures are to be considered a political matter which are to be resolved by the party itself without judicial intervention."  Taylor v. State Democratic Exec. Comm., 574 S.W.2d 716, 717-718 (Tenn. 1978).  The statute designates the executive committees of the state political parties as "state primary boards" to hear primary election contests.  In a primary election contest the statute allows the political party,

---

likelihood of success on the merits; (2) whether Plaintiff will suffer irreparable harm if the injunction is not granted; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction on the public interest); eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (to grant permanent injunctive relief, Court must consider: (1) whether Plaintiff has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the Plaintiff and the Defendants, a remedy in equity is warranted; and (4) the public interest would be served by permanent injunction).
  "[W]here an injunction is mandatory-that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act . . . the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from a denial of the injunction."  Phillip v. Fairfield Univ., 118 F.3d 131, 133 (2nd Cir. 1997) (per curiam).  This heightened showing is also necessary where issuance of the injunction would provide the movant with substantially all the relief she seeks and the relief could not thereafter be undone, if the non-moving party later prevailed on the merits.  Id.  Here, where the request for preliminary injunctive relief is consolidated with the merits of the case, the heightened standard would have applied.

not the legislature or any other governmental body, to determine which candidate the party deems best suited to represent the party in the general election for a specific public office.

When faced with a request by a party contestant to change the decision of the party's State Primary Board after completion of its own deliberative process, the federal court should tread lightly. Such cases brought before the federal courts seeking intervention in political party decision-making require the courts to consider a multitude of competing interests:

> [T]hese cases involve claims of the power of the federal judiciary to review actions heretofore thought to lie in the control of political parties. Highly important questions are presented concerning justiciability, whether the action of the [political party] is state action, and if so the reach of the Due Process Clause in this unique context. Vital rights of association guaranteed by the Constitution are also involved. While the Court is unwilling to undertake final resolution of the important constitutional questions presented without full briefing and argument and adequate opportunity for deliberation, we entertain grave doubts as to the action taken by the Court of Appeals [which held that the action of the Credentials Committee of the Democratic Party violated the Constitution of the United States].

O'Brien v. Brown, 409 U.S. 1, 4-5 (1972) (per curiam) (granting stay of judgment of court of appeals). The Supreme Court's hesitation to question the wisdom of the Democratic Party's internal decision about the seating of its delegates at a party convention is guidance for this Court in addressing the case brought before it.

Based upon the facts and circumstances of this case and the prevailing law, the Court finds that Plaintiff cannot establish two prerequisites that are necessary in order to sustain the 42 U.S.C. § 1983 due process claims identified in her Verified Complaint: (A) state action by the State Primary Board of the Tennessee Democratic Party and (B) her possession of a protected property right in the certified results of votes cast in the primary election for State Senate District 22. Because the Plaintiff does not satisfy these two threshold requirements to state a legal claim against the Defendants, the Court cannot, and does not, reach Plaintiff's constitutional claim that Tenn. Code § 2-17-104 is unconstitutional as applied in this case. Under recent Supreme Court precedent, the Court further concludes that § 2-17-104 is constitutional on its face, and thus Plaintiff's challenge to the statute itself also must fail.

## A. The Court has subject matter jurisdiction

The Defendants' contention that the Court lacks subject matter jurisdiction rests primarily on opinions of Tennessee state courts that they lack jurisdiction over primary election contests and that any such disputes are reserved to state primary boards for decision. The Defendants urge the Court to respect these state court decisions and decline to exercise federal jurisdiction pursuant to the Erie doctrine. See Hanna v. Plumer, 380 U.S. 460, 467 (1965). The Court will say more about the Tennessee state

12

decisions later in this opinion. The <u>Erie</u> doctrine, however, is rooted in the idea that the result of litigation should not vary simply because a case raising issues of state law is brought in federal court under diversity jurisdiction. <u>See</u> <u>id.</u>

Here, Plaintiff did not invoke the Court's diversity jurisdiction. Instead, she relies on 28 U.S.C. § 1343 to invoke the Court's federal subject matter jurisdiction to hear this civil rights action under § 1983. Because Plaintiff identified a proper basis for federal subject matter jurisdiction, the Court denies the motions to dismiss for lack of jurisdiction.

Moreover, even if the Court were to determine that abstention is proper under <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943), as Defendants contend, the Court would not lack subject matter jurisdiction over the case. Rather, the Court would decline to exercise its discretionary power to decide the case out of proper regard for the rightful independence of state government in carrying out its domestic policy. <u>Id.</u> at 317-318.

Defendants also question whether Plaintiff has standing to bring her claims and whether the matter is ripe for decision, but the Court finds that Plaintiff has sufficiently established standing and an actual case or controversy. <u>See</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-561 (1992); <u>North Am. Natural Resources, Inc. v. Strand</u>, 252 F.3d 808, 812 (6th Cir. 2001). The

13

Court does not find the case moot simply because absentee voting in the general election has begun.

**B.   Plaintiff cannot show state action under the Fourteenth Amendment**

The Fourteenth Amendment provides, in part, that "[n]o State shall . . . deprive any person of . . . property, without due process of law[.]" U.S. Const. amend. XIV, § 1. The Fourteenth Amendment sets forth an "essential dichotomy . . . between deprivation by the State, subject to scrutiny under its provisions, and private conduct, 'however discriminatory or wrongful,' against which the Fourteenth Amendment offers no shield." <u>Jackson v. Metropolitan Edison Co.</u>, 419 U.S. 345, 349 (1974) (quoted case omitted).

> Careful adherence to the state action requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power. It also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed. A major consequence is to require the courts to respect the limits of their own power as directed against state governments and private interests. Whether this is good or bad policy, it is a fundamental fact of our political order.

<u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 936-937 (1982). As a result, the Supreme Court has "insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." <u>Id.</u> at 937. "[T]he deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the

14

State is responsible[,]" and "the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." Id. But "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." American Mfgs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52 (1999).

Three tests exist to determine whether challenged conduct may be "fairly attributable to the State." Wolotsky v. Huhn, 960 F.2d 1331, 1335 (6th Cir. 1992). These tests are the "public function" test, the "state compulsion" test, and the "symbiotic relationship or nexus" test. Id. The Plaintiff relies on the "public function" test and the "symbiotic relationship" test. The "state compulsion" test has no application in this case.

To satisfy the "public function" test, the private entity must exercise "powers traditionally exclusively reserved to the State." Jackson, 419 U.S. at 352; Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 159 (1978). "This test is difficult to satisfy[,]" and is interpreted narrowly. Durante v. Fairlane Town Ctr., 201 Fed.Appx. 338, 341 (6th Cir. 2006). While many functions have been performed traditionally by governments, very few have been exclusively reserved to the State. Id.

15

The decisions of the State Primary Board, made through its individual members in their official capacity, to set aside the primary election in Senate District 22 and to delegate selection of a new Democratic nominee to the Democratic Executive Committees of Montgomery, Cheatham, and Houston Counties do not satisfy the "public function" test. The power to select a nominee for a political party has never been reserved traditionally and exclusively to the State of Tennessee. In fact, just the opposite is true, as the Tennessee General Assembly expressly disclaimed any role of state government in resolving party nomination contests and instead reserved power exclusively to the political party to choose the nominee whose name will appear on the general election ballot. Tenn. Code Ann. § 2-17-104(c). As recently reaffirmed by the United States Supreme Court, the right of a political party to choose its own nominee for public office is protected by the First Amendment. <u>Washington State Grange v. Washington State Republican Party</u>, — U.S. —, 128 S.Ct. 1184, 1191 (2008). In <u>California Democratic Party v. Jones</u>, 530 U.S. 567, 575 (2000), the Supreme Court observed:

> In no area is the political association's right to exclude more important than in the process of selecting its nominee. That process often determines the party's positions on the most significant public policy issues of the day, and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning it over to the party's views.
>
> * * * *

16

Unsurprisingly, our cases vigorously affirm the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party "select[s] a standard bearer who best represents the party's ideologies and preferences." . . . The moment of choosing the party's nominee, we have said, is "the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community."

In <u>Democratic Party of the United States v. Wisconsin</u> <u>ex rel.</u> <u>LaFollette</u>, 450 U.S. 107, 113 (1981), the Supreme Court addressed the question whether the State of Wisconsin could require the Democratic Party to seat delegates who were elected in accordance with the laws of Wisconsin, but whose election violated the rules of the Democratic Party. The Court ruled that, absent a compelling state interest, which it did not find present in that case, the State of Wisconsin could not justify an intrusion into the associational freedom of the Wisconsin Democratic Party to determine its delegates. <u>Id.</u> at 124-126.

However, the Supreme Court has said that, "[w]hile the Constitution protects private rights of association and advocacy with regard to the election of public officials, our cases make it clear that the conduct of the elections themselves is an exclusively public function." <u>Flagg Bros., Inc.</u>, 436 U.S. at 158. The Supreme Court has explained that this principle was established in a series of cases challenging the exclusion of African Americans from participation in primary elections in Texas, citing <u>Terry v. Adams</u>, 345 U.S. 461 (1953), <u>Smith v. Allwright</u>, 321 U.S. 649

17

(1944), and <u>Nixon v. Condon</u>, 286 U.S. 73 (1932). The scope of these cases, however, is "carefully defined." <u>Flagg Bros., Inc.</u>, 436 U.S. at 158. "The doctrine does not reach to all forms of private political activity, but encompasses only state-regulated elections or elections conducted by organizations which in practice produce 'the uncontested choice of public officials.'" <u>Id.</u>

Therefore, the Supreme Court recognizes the role States play in structuring and monitoring the election process, including primaries. <u>California Democratic Party</u>, 530 U.S. at 572. A State may require political parties to use the primary format for selecting their nominees, and a State may require political parties to demonstrate "a significant modicum of support" before allowing their candidates a place on the ballot. <u>Id.</u> "In order to prevent 'party raiding'–a process in which dedicated members of one party formally switch to another party to alter the outcome of that party's primary–a State may require party registration a reasonable period of time before a primary election." <u>Id.</u>

Importantly, what the Supreme Court has not held, however, "is that the processes by which political parties select their nominees are . . . wholly public affairs that States may regulate freely." <u>Id.</u> at 572-573 (footnote omitted). To the contrary, the Supreme Court has "continually stressed that when States regulate parties' internal processes they must act within limits imposed by the Constitution." <u>Id.</u> at 573. Cases like <u>Terry</u>, <u>Allwright</u>, and <u>Nixon</u>

18

hold "only that, when a State prescribes an election process that gives a special role to political parties, it 'endorses, adopts and enforces the discrimination against" African Americans "that the parties . . . bring into the process–so that the parties' discriminatory action becomes state action under the Fifteenth Amendment." Id. The cases "do not stand for the proposition that party affairs are public affairs, free of First Amendment protections–and [the Supreme Court's] later holdings make that entirely clear." Id. (internal citations omitted).

The facts of this case can be distinguished from Terry, Allwright, and Nixon. This case does not concern invidious racial discrimination practiced by a political party against a suspect class at a primary election. Rather, this case is governed by the Supreme Court cases warning federal courts to avoid interference with the First Amendment associational rights of a political party when that party is engaged in the process of selecting its nominee for public office.

Plaintiff also attempts to show state action through the "symbiotic relationship" or nexus test. Under this test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." Wolotsky, 960 F.2d at 1335. Merely because an entity is subject to state regulation

19

does not by itself convert its action into state action.  Id.
"Rather, it must be demonstrated that the state is intimately
involved in the challenged private conduct in order for that
conduct to be attributed to the state for purposes of section
1983." Id.

Plaintiff asserts "the fact that the state has entrusted the
power to resolve primary election contests with the State Primary
Board, and has reinforced the exclusivity of this entrustment
judicially, only serves to bolster the conclusion that the state is
intimately involved in this process." (Docket Entry No. 38,
Consolidated Memorandum at 15-16.) Plaintiff contends the State
Primary Board would have no authority to decide a primary election
contest if it were not for the empowering statute.

The Court does not agree with Plaintiff's proposition that the
state legislature's decision to permit political parties to resolve
their own nominating contests prior to the general election (and
the state courts' refusal to intercede in purely intra-party
disputes) constitutes state action under the law.  In fact, the
legislature's position is antithetical to state action.  The
statute provides that the private, political party itself, without
interference of state officials or courts, must "hear and determine
the contest and make the disposition of the contest which justice
and fairness require, including setting aside the election if
necessary." Tenn. Code Ann. § 2-17-104 (emphasis added). The

20

legislature and the courts are *not* given any role in making the decisions about whether a primary election contest has merit or whether the results of a primary election should be set aside in the interests of "justice and fairness."

The legislature and state officials have strong, if not compelling, interests in preserving the overall integrity of the electoral process by structuring and monitoring elections. <u>See California Democratic Party</u>, 530 U.S. at 572. In fulfillment of these important interests, state and county officials charged with election responsibilities may offer political parties advice and guidance on the application of Tennessee election laws. Yet, the legislature, through adoption of § 2-17-104, undoubtedly delegated the power and authority to decide the method, procedure and outcome of primary election contests to the State Primary Board, the governing entity of a private, political party. Simply stated, the manner in which primary election contests are handled is left to the parties. Purely political action taken by a party under the umbrella of this broad statute does not transform the party's decisions into state action under the "symbiotic relationship" test.

Plaintiff also asks the Court to void the Democratic Party State Primary Board's selection process to chose a primary replacement nominee and to issue a mandatory injunction requiring her name be placed on the ballot as the Democratic Party's nominee

in the general election for Senate District 22. The Court lacks power to grant such relief where the Plaintiff has not established state action in support of her § 1983 due process claims, even if such relief were found to be equitable and appropriate.

**C.    Plaintiff does not have a property right under the Fourteenth Amendment in the primary voter election results or her initial certification by the State Election Coordinator**

A plaintiff who alleges a procedural due process violation under the Fourteenth Amendment in his or her 42 U.S.C. § 1983 claim must show a protected property right, and only after this requirement is satisfied can the plaintiff prevail by showing that the property right was abridged without appropriate process. Hamilton v. Myers, 281 F.3d 520, 529 (6th Cir. 2002). In other words, there can be no federal procedural due process claim without a protected property interest. Experimental Holdings, Inc. v. Farris, 503 F.3d 514, 519 (6th Cir. 2007).

"Property interests protected by the due process clause must be more than abstract desires for or attractions to a benefit." Id. (citing Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). The due process clause protects only those interests to which a plaintiff has a legitimate claim of entitlement. Hamilton, 281 F.3d at 529. Property interests are not created by the Constitution, but through an independent source, such as state law. See Roth, 408 U.S. at 577. "Only after a plaintiff has met the burden of demonstrating that [she] possessed a protected property

22

. . . interest and was deprived of that interest will the court consider whether the process provided the plaintiff in conjunction with the deprivation, or lack thereof, violated [her] rights to due process." Warren v. City of Athens, 411 F.3d 697, 708 (6th Cir. 2005). The first inquiry, therefore, is whether the plaintiff has been deprived of a property right secured by the Constitution and laws. There is no abstract federal constitutional right to due process for process's sake. Olim v. Wakinekona, 461 U.S. 238, 250 (1983).

In her response to the Defendants' motions to dismiss, Plaintiff insisted that she "does not claim that she has a right to state political office that has been deprived without due process of law." (Docket Entry No. 38, Consolidated Memorandum at 7.) Rather, she "claims that she has been deprived, without due process of law, of the statutory rights that must follow from having received the most votes in a primary election under Tennessee law." (Id.) At oral argument, Plaintiff clarified that her perceived source of a property right is Tenn. Code Ann. § 2-8-113, pursuant to which the State Coordinator of Elections, Brook Thompson, certified her primary election victory over Defendant Barnes on September 4, 2008. From this certification, Plaintiff contends, she owns a protected property right and a series of steps should have been taken to place her name on the ballot as the Democratic Party's nominee for Senate District 22. However, she claims that

Case 3:08-cv-00948   Document 53   Filed 10/14/08   Page 23 of 41 PageID #: 1503

her vested property right has been stripped from her unconstitutionally because the contest statute, § 2-17-104, does not provide her with due process of law. Because her vested property right was taken from her without due process of law and without any legal procedure for selecting a replacement nominee, she claims entitlement to injunctive relief to be placed on the general election ballot as the Democratic nominee for Senate District 22.

Defendants contend that Plaintiff cannot focus on the certification of primary election votes by the State Coordinator of Elections under § 2-8-113 in isolation and this statute must be read in conjunction with other relevant statutes. They observe that the Montgomery, Cheatham and Houston County Election Commissions certified the results of the primary election for Senate District 22 on August 18, 2008 pursuant to Tenn. Code Ann. § 2-8-101(a), and Defendant Barnes filed a timely election contest within five (5) days thereafter on August 25, 2008, pursuant to Tenn. Code Ann. § 2-17-104. The State Coordinator of Elections certified all of the Tennessee county primary results and declared winners of various races on September 4, 2008 pursuant to § 2-8-113. But his certification of the Senate District 22 race and the earlier county-level certification of that race were subject to the outcome of the timely election contest filed by Defendant Barnes. Defendants argue that any property right Plaintiff might have had

24

in the certified result of the primary election, either pursuant to the County Election certification under § 2-8-101(a) or the State Coordinator of Elections' certification under § 2-8-113, did not vest.

The Court agrees with the Defendants that the election statutes must be read harmoniously. The certifications of the primary election result in Senate District 22 set in motion two different processes: (1) the Democratic Party's finalization of its nominee to represent the party in the general election and (2) the completion of many specific responsibilities and duties carried out by state and county election officials to prepare for absentee voting and the general election--not only for Plaintiff's race, but other races as well. State statutes require that both of these processes proceed on specific and tight deadlines.

The certifications of the result of the Senate District 22 primary race were necessarily subject to the election contest filed by Defendant Barnes. The Democratic Party could not finalize its choice of a candidate until Defendant Barnes' election contest was resolved by the State Primary Board. The contest statute, § 2-17-104, unmistakably delegated to the State Primary Board the exclusive right to hear and determine the election contest and to make a disposition that fairness and justice required, including setting aside Plaintiff's election if necessary.

25

Following a hearing at which the parties appeared and presented evidence and arguments, the State Primary Board voted to set the primary election aside because the results were "incurably uncertain," declared the election results void, and decided to refer the party nominating process to a joint nominating convention consisting of county Democratic Primary Boards from the three affected counties. By a vote of the three county Democratic Primary Boards, Defendant Barnes was selected as the Democratic nominee for District 22. Once the county convention named Defendant Barnes the nominee, the State Democratic Party certified Defendant Barnes to the State Coordinator of Elections as the party's nominee for the 22nd Senatorial District, and state and county election officials continued to carry out their statutory duties by placing his name on the ballots being prepared for absentee and general voting. Thus, the Court finds as a matter of law that Plaintiff did not have a vested property right in the initial certification of the Democratic primary election by the State Coordinator of Elections.

The Court's conclusion is consistent with cases decided in Tennessee, the Sixth Circuit, the Supreme Court and other jurisdictions. Tennessee state law is abundantly clear that the State's chancery courts lack jurisdiction to hear state primary election challenges like this one because such disputes involve purely political rights and such disputes are to be referred to the

political parties for resolution. See Heiskell v. Ledgerwood, 234 S.W. 1001, 1001-1002 (Tenn. 1921) (holding court lacked jurisdiction to hear and determine matter because State Primary Election Board decision was final, conclusive, and not subject to review by the courts); Taylor v. Tennessee State Democratic Executive Comm., 574 S.W.2d 716, 717-718 (Tenn. 1978) (holding state chancery courts lacked jurisdiction to hear attack on party nomination for public office and State Primary Board of the Democratic Party had exclusive jurisdiction to dispose of such contest); Inman v. Brock, 622 S.W.2d 36, 42-43 (Tenn. 1981) (holding state legislative intent is to keep courts and public sector out of "intra-party actions, reactions and squabbles" and challenges to primary elections are to be settled within the party structure). Even if this federal § 1983 claim had been filed in state court, Plaintiff would not have been able to establish a Fourteenth Amendment property right in her initial election victory.

The Supreme Court has held repeatedly that a person elected to state political office does not have a property right in that elected office and thus, where no property right exists, there can be no claim for a violation of due process under the Fourteenth Amendment. Taylor v. Beckham, 178 U.S. 548, 577-578 (1900) (citing prior cases and ruling on dispute concerning Kentucky Governor's race); Snowden v. Hughes, 321 U.S. 1, 7 (1944) (holding candidate

27

in primary election for Illinois state senate seat did not have property interest in public office).  "The decisions are numerous to the effect that public offices are mere agencies or trusts, and not property as such. . . . [T]he nature of the relation of a public officer to the public is inconsistent with either a property or a contract right."  <u>Taylor</u>, 178 U.S. at 577.

Other courts, including our own Sixth Circuit, have followed these cases to hold that nomination or election to a public office is not property within the meaning of the Fourteenth Amendment.  <u>Burks v. Perk</u>, 470 F.2d 163, 165 (6th Cir. 1972) (per curiam) (holding Cleveland city commissioners did not have property interests in their public offices under Fourteenth Amendment); <u>Velez v. Levy</u>, 401 F.3d 75, 85-87 (2nd Cir. 2005) (holding elected school board member did not have property interest in her seat on school board); <u>Grimes v. Miller</u>, 448 F.Supp.2d 664, 672-673 (D. Md. 2006) (holding elected town council member did not have property interest in her seat); <u>Emanuele v. Town of Greenville</u>, 143 F.Supp.2d 325, 333 (S.D.N.Y. 2001) (holding town clerk did not have property interest in her election); <u>Cornett v. Sheldon</u>, 894 F.Supp. 715, (S.D.N.Y. 1995) (holding candidate for federal office did not have property or liberty interest in the office); <u>Corn v. City of Oakland</u>, 415 N.E.2d 129, 133 (Ind. Ct. App. 1981) (holding no vested property or contractual right to public office); <u>State ex rel. Pecyk v. Greene</u>, 114 N.E.2d 922, 927 (Ohio Ct. App. 1953)

28

(holding candidates for office of councilman at city primary election did not have property interests in public office); <u>Lahart v. Thompson</u>, 118 N.W. 398, 398 (Iowa 1908) (holding nomination at primary election does not give person named a vested interest in office or a place on official ballot). Even the cases Plaintiff cites recognize that a candidate does not possess a property right in the results of a primary election if that result can be voided by an authorized tribunal, such as the State Primary Board. <u>See Taylor v. Nealon</u>, 120 S.W.2d 586, 587 (Tex. 1938); <u>Rowe <em>ex rel.</em> Schwartz v. Lloyd</u>, 36 A.2d 317, 319 (Penn. 1944).

In view of this federal and state jurisprudence, Plaintiff cannot establish a critical, prerequisite element of her due process claims. She cannot show that she possessed a property right in the certified results of the August 2008 primary election for Senate District 22. Accordingly, Plaintiff fails to state § 1983 claims, and these claims must be dismissed under Rule 12(b)(6).

## C. Plaintiff has not shown the statute is facially constitutional

As to Plaintiff's challenge to the facial validity of Tenn. Code Ann. § 2-17-104, the Court must first address the affirmative defense of laches. Defendants contend that Plaintiff knew on August 25, 2008, the date Defendant Barnes filed the primary election contest, that the Executive Committee of the Tennessee Democratic Party, sitting as the State Primary Board, would

29

determine the election contest pursuant to § 2-17-104(c). Defendants further assert that, if Plaintiff wished to challenge the facial constitutionality of the statute due to a lack of substantive standards or procedures for the conduct of the election contest, Plaintiff should have filed her lawsuit immediately to seek injunctive relief to bar the State Primary Board from hearing the election contest. But Plaintiff did not file her lawsuit immediately. She participated in the election contest and waited to file suit until after the State Primary Board set aside the primary election result and the County Democratic Executive Committees named Defendant Barnes the Democratic nominee for Senate District 22. Thus, Defendants argue, Plaintiff sat on her rights until preparations for absentee voting, early voting, and the general election were so far underway as to raise serious doubt whether, or if, election officials would have sufficient time to respond to any Order by this Court in Plaintiff's favor. Plaintiff answers that she did not suffer any injury for which she could sue until her primary election victory was set aside on September 13, 2008, and Defendant Barnes was chosen on September 17 as the Democratic nominee whose name will appear on the general election ballot.

For support Defendants rely on the <u>Taylor</u> case decided by the Tennessee Supreme Court in 1978. There, the court held that the chancery court lacked any jurisdiction over the election contest.

30

574 S.W.2d at 717-718. In dicta, the Tennessee Supreme Court also noted that, even if the chancery court had jurisdiction, defendant could have relied on the defense of laches. In that case the plaintiff participated in a nominating process he alleged was an unlawful procedure and after failing to win his party's nomination, he waited eight (8) weeks "while the nominee, the Democratic Party, and the entire election machinery of the state prepared for the general election." Id. at 718. By his own conduct, the court held, the plaintiff created a situation where laches would apply. Id.

By contrast, Plaintiff Kurita did not wait 8 weeks after Defendant Barnes was chosen as nominee to bring this lawsuit. Defendant Barnes was named the nominee on September 17 and Plaintiff filed suit one week later on September 24. She did not sit on her rights, but directed her counsel to prepare and file the Verified Complaint, which was accomplished within seven (7) days. Plaintiff is correct that she was not convinced she had suffered a tangible injury upon which she could sue until September 17 when she knew her name would not appear on the ballot as the Democratic Party candidate. Thus, laches does not apply to bar her facial challenge to Tenn. Code Ann. § 2-17-104.

The Court cannot undertake an examination of the facial constitutionality of the statute, however, without recognizing that the state legislature is presumed to have acted constitutionally in

31

enacting the statute.  See Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy, 740 F.2d 1362, 1366 (6th Cir. 1984) (citing McDonald v. Board of Election Commissioners, 394 U.S. 802 (1969)).  Additionally, the acts of the Tennessee General Assembly are presumed valid under Tennessee law, and in cases of doubt the statute should be held constitutional.  Id.; Petition of Burson, 909 S.W.2d 768, 775 (Tenn. 1995).  It is a fundamental rule of judicial restraint that the Court "not reach constitutional questions in advance of the necessity of deciding them."  Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Enq'q, P.C., 467 U.S. 138, 157 (1984).

Facial challenges generally are disfavored because they often rest on speculation; they run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied; and they "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." Washington State Grange, 128 S.Ct. at 1191.  A ruling of unconstitutionality frustrates the intent of the elected representatives of the people.  Id.  For these reasons, the Court

32

must be careful not to go beyond the statute's facial requirements and speculate about "hypothetical" or "imaginary" cases. Id.

The statute Plaintiff challenges as unconstitutional on its face, Tenn. Code Ann. § 2-17-104, makes three provisions. First, it states that "[a]ny candidate may contest the primary election of the candidate's party for the office of which that person was a candidate." Second, it provides that any election contest must set forth all of the grounds upon which the contest is predicated and be filed within five (5) days after the certification of results by the county election commission. Finally, it provides that the state primary board must hear and determine the matter and make a disposition of the dispute.

Plaintiff asserts that the statute is facially unconstitutional because it does not provide any standards or procedures for the State Primary Board to follow in resolving an election contest, as some states' codes provide, (Docket Entry No. 38, Consolidated Memorandum at 2 n.1, citing statutes), and this is an apparent flaw every time and in all cases of a primary election contest. She argues that the statute's direction for the state primary board to decide the matter "in a fair and just manner" is so vague and uncertain that it amounts to no standard at all. Further, the State Primary Board itself did not adopt standards or procedures to regulate election contests before Defendant Barnes filed his election contest on August 25, 2008. Consequently,

Plaintiff complains that she did not know what rules or standards would govern the adjudication of Defendant Barnes' election contest before the State Primary Board.

Careful attention to the language of the statute is important. The statute does not direct the State Primary Board to conduct an election contest in a "fair and just" manner. The statute says the "state primary board shall hear and determine the contest and make the disposition of the contest which justice and fairness require, including setting aside the election if necessary." Giving the statute its ordinary and plain meaning, the state primary board shall (1) hear and determine the contest; and (2) make the disposition of the contest which justice and fairness require, including setting aside the election if necessary. The statute grants full power and authority in the State Democratic Primary Board to "hear and determine the contest" and to decide a disposition of the matter which justice and fairness require.

To succeed on a facial challenge to § 2-17-104, Plaintiff carries a high burden to establish that no set of circumstances exists under which the statute as written would be valid and that the law is unconstitutional in all of its applications. <u>Washington State Grange</u>, 128 S.Ct. at 1190. Plaintiff has not met the burden here. She has not shown that there is no set of circumstances under which the statute would be valid. It is not enough for Plaintiff to speculate that the State Primary Board would decide a

34

nomination matter arbitrarily or capriciously. Numerous circumstances can be envisioned under which the State Primary Board could constitutionally discharge its duties under this statute pursuant to fair standards and procedures adopted by the Board prior to, and tailored for, a particular election contest.[5]

In an effort to protect her own due process rights, Plaintiff claims the Tennessee General Assembly should have placed more directions and restrictions in § 2-17-104 to regulate the manner in which the State Primary Board is permitted to evaluate a primary election contest, and she also faults the legislature for not providing an avenue of appeal or judicial review from the State Primary Board's adjudicative decision. However, the legislature in passing the statute might have deliberately left the election contest instructions general so as to allow the party flexibility in deciding the proper methods and procedures to address the grounds stated in the protest. The legislature also may have eliminated detailed instructions or standards in the statute to

---

[5]For example, in this very case, in an effort to reach a disposition which justice and fairness required, the State Primary Board sought the advice of Brook Thompson, the State Coordinator of Elections, before the hearing about the proper method of choosing a party nominee if the primary election result was set aside. They looked to Tenn. Code Ann. § 2-13-204(4) for guidance. That statute provides for a method of filling a seat in the general assembly due to a candidate's withdrawal or death. The convention method described in that statute was adopted by the State Primary Board and used by the County Executive Committees to choose Defendant Barnes as the nominee for Senate District 22. This does not appear on its face to be arbitrary or capricious conduct by party leaders.

35

avoid potential constitutional problems relating to the political party's right to freely associate under the First Amendment. <u>See</u> <u>Washington State Grange</u>, 128 S.Ct. at 1191 ("Election regulations that impose a severe burden on associational rights are subject to strict scrutiny," and the courts uphold "them only if they are 'narrowly tailored' to serve a compelling state interest.'").

While it is true that the Democratic State Primary Board did strip the Plaintiff of her narrow primary election victory over Defendant Barnes, the state legislature has granted broad power and authority to that party body to select the party's nominee in the general election. One could argue that Plaintiff's fate was sealed when her primary opponent, Defendant Barnes, filed a contest with the County Election Commission because the resolution of such contest is left solely within the discretion of the State Democratic Primary Board with one simple caveat--that being that the primary election dispute be disposed of as justice and fairness require. As Plaintiff argues, there are no safeguards or procedures to assure that this goal will be achieved. This broad grant of authority includes the power to set aside the primary election results. In such event, however, the statute is again silent about how the State Primary Board should proceed to select a replacement party nominee. In the absence of legislative direction, the State Primary Board chose to hold a joint convention of the County Primary Boards and these party leaders voted for

36

Plaintiff's opponent, Defendant Barnes. The State Primary Board then certified the party's general election nominee to the State Coordinator of Elections.

Although many Democratic party voters, as well as members of the general public may be upset with the Democratic Party leaders reversing the outcome of the Democratic primary election, the state statute allows the State Primary Board the final decision of selecting its party nominee if a primary election is contested. It is the role of the Tennessee General Assembly, and not this federal Court, to determine whether any additional standards, restrictions and procedures should be added to § 2-17-104. It is significant to note that, although state law governs state primary elections, the Plaintiff has not sought redress in any state court. Perhaps this is because those state courts, interpreting state law, hold that party primary contests and related disputes are private, not public, affairs and the courts should not assume jurisdiction over the disputed matters or interfere in their resolution. The same rationale applies to attempts to appeal such party decisions to the courts.

In this case the Plaintiff sought relief under federal law alleging deprivation of her rights guaranteed by the Fourteenth Amendment. If there is doubt that the statute is constitutional, this Court must uphold it as constitutional. See Hartford Fire Ins. Co., 740 F.2d at 1366; Petition of Burson, 909 S.W.2d at 775.

37

Consequently, because the Court concludes that Plaintiff has not carried her burden to make a facial challenge to the constitutionality of the statute, this claim will also be dismissed under Rule 12(b)(6).

## D. Remaining issues

Many other arguments are made by the parties which the Court does not need to reach or address. Defendants question the status of Counts II through IV of the Verified Complaint because, in seeking consolidation of the merits with the hearing on the motion for preliminary injunctive relief, Plaintiff stated she "is not seeking review of the September 13, 2008 decision made by the Tennessee Democratic Party's State Primary Board and is not questioning its factual or legal findings." (Docket Entry No. 7, Plaintiff's Motion to Consolidate at 2.) Further, Defendants raise Burford abstention as another ground for dismissing the Verified Complaint, relying on Seider v. Hutchison, 2007 WL 320964 at *3-4 (E.D. Tenn. Jan. 30, 2007) (exercising Burford abstention and declining to decide dispute involving primary election for county sheriff where doing so would result in unwarranted federal court interference with State of Tennessee's administration of state policies).

Defendants also contend that, even if Plaintiff could establish the initial required elements of her § 1983 claims, she cannot prove that § 2-17-104 is unconstitutional as applied to her,

38

or that she was denied due process at the hearing before the State Primary Board. Defendants describe the participation of Plaintiff's attorney in developing the procedural rules used by the State Primary Board at the hearing, and they note that Plaintiff was represented by counsel throughout the process and participated fully in the hearing. Defendants assert that the State Primary Board was not constitutionally required to issue written findings or a written opinion explaining its decision. Finally, even if Plaintiff could establish the merits of her due process claims, Defendants allege that Plaintiff is not entitled to preliminary injunctive relief because she would not suffer irreparable harm since she has been allowed to run in the general election as a write-in candidate for the District 22 Senate seat. Defendants also claim that the balance of harm to others weighs against Plaintiff because it is too late for Defendant Barnes to run as a write-in candidate and the public would be harmed by having the election process disrupted. Plaintiff has arguments to counter and/or rebut Defendants' claims against injunctive relief, but the Court chooses not to address them in substantive fashion in view of its findings on Defendants' Motions to Dismiss.

In summary, because Plaintiff has not established that Tenn. Code Ann. § 2-17-104 is facially unconstitutional and Plaintiff has not met the critical prerequisites of proof in a § 1983 case to allow her to proceed on her as-applied due process claims,

39

addressing any of these additional points would require the Court to give an unwarranted advisory opinion.

## IV. CONCLUSION

For all of the reasons stated herein, the Court finds that Plaintiff Rosalind Kurita fails to state a legal claim against the Defendants that would entitle her to the § 1983 relief she seeks. Her Verified Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Thus, Plaintiff's Motion For Preliminary Injunction And Temporary Restraining Order (Docket Entry No. 5) will be denied. Further, Plaintiff's requests in her Verified Complaint for declaratory judgment in her favor and a permanent injunction holding Tenn. Code Ann. § 2-17-104 unconstitutional on its face and as applied to her and directing that her name be placed on the general election ballot as the Democratic nominee for State Senate District 22, or alternatively, that the results of the general election for Senate District 22 be set aside and a special election held, will be denied.

The Motion To Dismiss Or Abstain Filed By Defendants Tennessee Democratic Party And State Primary Board of the Tennessee Democratic Party, the State Defendants' Motion To Dismiss, and Defendant Tim Barnes' Motion To Dismiss (Docket Entry Nos. 23, 31, 32 & 36), will be granted in part and denied in part. The Motions will be granted under Rule 12(b)(6) because Plaintiff fails to state a legal claim against the Defendants. The Motions will be

40

denied under Rule 12(b)(1) because the Court does not lack federal subject matter jurisdiction over the lawsuit. The case will be dismissed with prejudice.

An appropriate Order shall be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE